IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-144-D-BM

VICTORIA NORRIS,                    )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )        **DEFENDANTS' MEMORANDUM**
                                    )        **OF LAW IN SUPPORT OF MOTION**
FAT BURGERS SPORTS BAR &            )        **FOR SUMMARY JUDGMENT**
GRILL, LLC and WILLIAM              )
UZZELL, III,                        )
                                    )
                    Defendants.     )
_____      )

## SUMMARY OF THE NATURE OF THE CASE

Fat Burgers Sports Bar & Grill, LLC ("Fat Burgers") is a small, locally owned restaurant in Sneads Ferry, North Carolina that serves hamburgers and other traditional "bar food." Plaintiff started working at Fat Burgers in May 2016 and remains employed, currently working as a manager. Plaintiff's responsibilities include managing all front of house staff, training front of house staff and bartenders, and providing back-up service support when the restaurant is understaffed. Throughout her employment, Plaintiff has received steady raises and promotions. She is currently paid a salary of $800.00 per week and is also paid tips earned during her shifts. She has earned several bonuses during her employment, and is one of Fat Burgers' highest paid employees, if not the single highest paid employee.

Plaintiff and William Uzzell, III ("Mr. Uzzell"), owner of Fat Burgers, had a long-running romantic relationship, including living together for several years.

Plaintiff's claims rest, in relevant part, on issues between them related to their personal relationship and not Plaintiff's employment, as well as unsupported allegations about Fat Burgers' business practices.

Plaintiff asserts: (1) that she has been discriminated against on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); (2) that Defendants engaged in intentional infliction of emotional distress; (3) that Defendants failed to pay overtime and retaliated against her, in violation of the Fair Labor Standards Act ("FLSA"); and (4) that Defendants failed to pay owed wages and tips, in violation of the North Carolina Wage and Hour Act.

As an initial matter, courts have consistently held that a supervisor's preferential treatment of a paramour based on a consensual romantic relationship is not discrimination based on sex. It follows, by the same logic, that the rescission of such preferential treatment based on the termination of a consensual romantic relationship is also not discrimination based on sex. Indeed, Title VII's requirement is that employers act without regard to sex or other legally protected classes. However, it does not preclude favoritism, nor does it entitle employees to continued preferential treatment. This is especially so where a former paramour ceases to receive preferential treatment and instead receives the same treatment as all other employees, without regard to sex.

The undisputed facts also demonstrate that Mr. Uzzell did not engage in extreme and outrageous conduct sufficient to support a claim for intentional infliction of emotional distress.

Plaintiff appears to concede that she is not entitled to overtime under the FLSA. It is undisputed that, at all relevant times, she was a salaried managerial employee, exempt from the FLSA's overtime requirements. Similarly, Plaintiff appears to concede that she was not legally entitled to participate in Fat Burgers' tip pool as a salaried, managerial employee – even though she has received tipped wages for most, or all, of the relevant time period. Finally, the record demonstrates that Plaintiff has been paid all bonus/profit sharing amounts owed to her during the duration of her employment at Fat Burgers.

In the end, there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Please see the Statement of Undisputed Facts being filed contemporaneously with this Memorandum.

## QUESTIONS PRESENTED

1. Whether Plaintiff has a colorable action against Defendants pursuant to the North Carolina Wage and Hour Act when the undisputed record shows that Plaintiff was compensated properly as to her annual bonus/profit share and she has received all compensation to which she is entitled.

2. Whether Plaintiff has a colorable action against Defendants pursuant to the FLSA when the undisputed record shows that Plaintiff was properly compensated for all hours worked and received all compensation to which she is entitled.

3. Whether Plaintiff has a colorable action against Fat Burgers for sex discrimination when the undisputed record shows that Plaintiff did not suffer any adverse employment action and Plaintiff's allegations of employment discrimination rest entirely on personal disputes between Plaintiff and Mr. Uzzell.

4. Whether Plaintiff has a colorable action against Defendants for intentional infliction of emotional distress related to her employment when the undisputed record shows that Plaintiff's claim rests entirely on mutual arguments and quarrels related to the Parties' former romantic relationship.

**LEGAL ARGUMENT**

## I. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect how a case comes out. *Id.* To defeat summary judgment, the nonmoving party must present evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Id.* A non-moving party may not rest on mere allegations or denials; she must produce "significant probative evidence tending to support the complaint." *Id.* at 249.

Plaintiff's lawsuit, pared to its essence, is premised on her contention that she was treated unfairly after her romantic relationship with Mr. Uzzell ended, as well as unfounded speculation that her annual bonus/profit sharing was improperly calculated for the 2020 and 2021 calendar years. The undisputed record, however, establishes that Plaintiff was not subjected to discrimination for any reason, and certainly not on the basis of her sex, and that she was properly compensated throughout her employment with Fat Burgers.

## II. PLAINTIFF'S WAGE AND HOUR CLAIM SHOULD BE DISMISSED.

North Carolina's Wage and Hour Act sets out the State's wage payment requirements, overtime requirements, and addresses other issues related to employee compensation in the State. N.C. Gen. Stat. § 95-25.1(b). The Wage and Hour Act receives liberal construction to protect the welfare of workers. N.C.G.S. § 95-25.25. The Act's wage payment provision states that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C.G.S. § 95-25.6.

Plaintiff couches her Wage and Hour Act claim on allegations that Fat Burgers did not pay bonus or profit share amounts she claims that she was owed, and that it withheld tips that she was entitled to collect. However, the record demonstrates that Plaintiff's allegations lack factual and legal support. On the contrary, the evidence clearly reflects that Plaintiff received all annual bonus/profit share amounts to which she is entitled, she is not entitled to participate in the restaurant's tip pool, but, in any event, she has received all tips that she contends she is owed.

Plaintiff provides no factual support for her contention that she has not received the annual bonus/profit share to which she is entitled. Instead, Plaintiff mysteriously pivots from her initial contention upon filing an EEOC Charge of Discrimination and this lawsuit, to make mere conclusory assertions that Fat Burgers improperly calculates its profit amount. (DE 1, Complaint, ¶ 33) (*Cf.* Ex. H, Charge of Discrimination).[1]

The material, undisputed facts, as they relate to Plaintiff's Wage and Hour Act claim are as follows: (1) as part of Plaintiff's compensation structure, Mr. Uzzell agreed that she would be paid 20% of the restaurant's annual profit amount (Ex. M, Victoria Norris Deposition Volume I ("Norris Depo. I"), p. 28:11-13); (2) at the end of each month, Plaintiff is also paid 20% of the restaurant's cash on hand (Ex. D, Dawn Potter Deposition ("Potter Depo"), p. 70:1-4 ; 94:1-4); (3) Plaintiff's 2020 annual bonus/profit share was delayed due to a business tax filing extension (Ex. A, Norris Depo., pp. 171:12-172:4); (4) Plaintiff was made aware of this delay (*Id.*); (5) in May of 2021, then operations manager Taylor Greene informed Plaintiff that she was no longer allowed participate in the restaurant's tip pool due to her role as manager, (Ex. F, Retaliatory Employment Discrimination Complaint Form ("REDA

---

[1] Each exhibit referenced in this Memorandum correlates with the numbered exhibits attached to the contemporaneously filed Statement of Undisputed Facts.

Complaint"), p. 2); (6) as a result, Plaintiff began to turn the portion of the tip pool that she would normally collect over to Fat Burgers' bookkeeper, Dawn Potter, who kept the tips in the Fat Burgers office. (Ex. D, Potter Depo., pp. 84:9-84:19); (7) Ms. Potter reported to Mr. Uzzell that Plaintiff was prohibited from participating in the restaurant's tip pool, and he instructed Ms. Potter to pay the tips to Plaintiff, which she did, and Mr. Uzzell further instructed Ms. Potter that Plaintiff would be allowed to participate in the tip pool (*Id.*); (8) Plaintiff received her 2020 annual bonus/profit share on September 10, 2021 (Ex. J, Plaintiff's April through December 2021 Payroll Summary); (9) Plaintiff received an amount in excess of what she was actually owed for her 2020 annual bonus/profit share (Ex. D, Potter Depo., p. 84:20-22); (10) Fat Burgers did not make a profit in 2021, nor did it make a profit for 2022 (Exhibit R, Fat Burgers Tax Returns); (11) on March 24, 2022, after receipt of her 2020 bonus, Plaintiff filed an Amended Charge of Discrimination, under penalty of perjury, wherein she claimed that Fat Burgers refused to pay her 2020 bonus amount; and (12) on August 13, 2022, Plaintiff filed her Complaint wherein she alleged that she was not paid the bonus amount that she was owed (DE 1, ⁋ 33).

Considering the evidence in the light most favorable to Plaintiff, the Court is tasked with determining whether the record evidence can demonstrate that Plaintiff was not compensated with her annual bonus/profit share amounts. Summary judgment is appropriate upon "proper showings of the lack of a *genuine, triable issue of material fact.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548 (1986) (emphasis added). The summary judgment procedure is "an integral part of the

Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* (citations omitted) (quotations omitted).

The material record evidence demonstrates that Plaintiff has been paid all bonus/profit share amounts to which she is entitled. Moreover, the record evidence demonstrates that Plaintiff has been paid *more* than what she is owed in annual bonus amounts. Plaintiff's eleventh-hour pivot to revise her claim to acknowledge that she was in fact paid a 2020 bonus, but, instead, allege that the business' profits are improperly calculated is factually unsupported, does not give rise to a *genuine* dispute of material facts, and must fail.

Plaintiff, Fat Burgers' bookkeeper (Dawn Potter), and Mr. Uzzell have all offered testimony stating that Fat Burgers' accountant, exclusively, is responsible for calculating the business' income and expenditures and determining whether the business has turned a profit each year. (Ex. A, Norris Depo II, p. 164:16-20) (Ex. D, Potter Depo, p. 39:14-19) (Ex. B, William Uzzell, III Deposition Transcript ("Uzzell Depo"), pp. 321:19-322:10). As such, Plaintiff cannot establish, based upon the record evidence, any more than mere hollow allegations regarding any inaccuracies in the calculation of Fat Burgers' income and expenditures. She has designated no expert to contradict the accountant's computation or the financial data from which the tax returns were prepared. It is well settled that Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon

another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Pursuant to Plaintiff's profit-sharing compensation structure, Plaintiff receives 20% of the restaurant's annual profits, as well as 20% of the restaurant's cash on hand. (Ex. Q: Profit Sharing Structure). The record evidence establishes that, despite Plaintiff's allegations made to the EEOC, and before this Court, she received profit/share compensation for the year 2020 in an amount that *exceeds* what she was owed. Moreover, the record evidence establishes that Plaintiff was not entitled to profit-sharing compensation for the years 2021 and 2022 because the business did not make a profit in those years. Indeed, Plaintiff acknowledges that she received a 2020 bonus check, but that she did not cash the check because she did not like the timing of when the check was issued to her. (Ex. A, Norris Depo., p. 196:9-22).

Therefore, to the extent that Plaintiff asserts a Wage and Hour Act claim related to her bonus/profit sharing compensation, that claim fails as a matter of law.

> b. *Plaintiff is not entitled to participate in the restaurant's tip pool.*

As a manager and supervisor at Fat Burgers, Plaintiff is not legally entitled to any part of the restaurant's tip pool. *See,* 29 C.F.R. § 531.50 ("[A]n employer may not keep tips received by its employees for any purposes, including allowing managers and supervisors to keep any portion of employees' tips."). *See also, Cortez v. Casa do Brasil, LLC*, 646 F.Supp.3d 847, 852 (S.D. Tex. 2022). As such, Plaintiff's Wage and Hour Act claim also fails as it relates to her allegation that she was denied the ability to participate in the restaurant's tip pool.

Indeed, Plaintiff appears to concede that she is not legally entitled to participate in the restaurant's tip pool. *See,* (Ex. B, Uzzell Depo., p. 361:3-10) (Plaintiff's counsel advises Mr. Uzzell that salaried managers, such as Plaintiff, are legally prohibited from participating in a tip pool). *See also*, (Ex. D, Potter Depo., p. 94:13-15) (Plaintiff's counsel: "So perhaps what [Mr. Greene] was doing related to the tips was following the law? Did you know that?").

Based upon the undisputed record evidence, as well as Plaintiff's apparent concession that she is not legally entitled to participate in the restaurant's tip pool, Plaintiff's Wage and Hour Act claim should be dismissed as a matter of law.

      c. *Alternatively, the undisputed record evidence demonstrates that Plaintiff has received all tips to which she claims she is entitled.*

Even if Plaintiff was entitled to participate in the restaurant's tip pool, which she is not, her Wage and Hour Act claim still fails as a matter of law.

As outlined above, Mr. Greene initially instructed Plaintiff to cease participation in the restaurant's tip pool. Upon learning of Mr. Greene's instruction, Mr. Uzzell instructed that Plaintiff's collected tip pool amounts be paid to her, and they were in fact fully returned to her, and Plaintiff was allowed to resume participation in the restaurant's tip pool. (Ex. D, Potter Depo., p. 84:1-19) As such, Plaintiff is not owed, and does not contend that she is owed, any outstanding tip amount.

Plaintiff's claim that she is owed compensation for tips that were paid to her is unsubstantiated. Therefore, Plaintiff's Wage and Hour Act claim is ripe for summary judgment where the undisputed record evidence demonstrates that Plaintiff has

received her bonus/profit share compensation for each year that Fat Burgers turned a profit, and that Plaintiff is not entitled to any amount of the restaurant's tip pool. The record raises no genuine factual dispute regarding her pay.

### III. PLAINTIFF'S FAIR LABOR STANDARDS ACT CLAIM SHOULD BE DISMISSED.

   *a. Plaintiff is not entitled to overtime compensation.*

The Fair Labor Standards Act ("FLSA") requires that where an employee works in excess of forty hours in one workweek, "such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. However, employees who are employed in a *bona fide* executive, administrative, or professional capacity are exempt from the overtime pay requirements set forth in 29 U.S.C. § 207. *See* 29 U.S.C. § 213. An employee meets the executive or administrative capacity exemption from the overtime pay requirements by meeting two requirements: (1) the employee must be paid on a salary basis, and (2) the employee's primary duty must be either management, administration, or a combination of the two. *Shockley v. City of Newport News*, 997 F.2d 18, 21-22 (4th Cir. 1993).

An employee is paid on a salary basis if she regularly receives a predetermined amount constituting all or part of her compensation each pay period "*which amount is not subject to reduction because of variations in the quality or quantity of the work performed.*" *Id.* at 22 (quoting 29 C.F.R. § 541.118(a) (emphasis in original).

Where an employee is paid more than $250 a week, the federal regulations require that a "short test" be applied in order to determine whether an employee's primary duty is management. *Id.* at 25. The short test for executive employment is satisfied where the employee's "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein." 29 C.F.R. § 541.1(f). "Whether a job qualifies as managerial or not is a legal question." *In re Food Lion, Inc.*, 151 F.3d 1029, *4 (4th Cir. 1998) (unpublished).

Plaintiff couches her FLSA claim in allegations that Fat Burgers failed to pay her at an overtime rate for time she worked in excess of forty hours per week[2], and that she was prohibited from participating in the restaurant's tip pool. Plaintiff alleges that she regularly worked more than forty hours per workweek and that she is not paid one-and-one-half times her regular pay rate.

Plaintiff's FLSA allegation, as it relates to her contention that she is owed overtime compensation, is unfounded for the following undisputed reasons: (1) Plaintiff is currently employed as a manager for Fat Burgers (DE 1, ¶ 21); (2) Plaintiff is paid a weekly salary of $800 (Ex. A, Norris Depo., p. 226:12-13); and (3) Plaintiff's job responsibilities primarily include managing employees, supplies, and customer

---

[2] It is worth noting that Plaintiff has put forth no evidence regarding the number of weeks she claims that she worked overtime, nor has she put forth any evidence regarding the amount of overtime pay she contends she is owed. *See, e.g.* (Ex. S: Plaintiff's Initial Disclosures).

experience (Ex. C, Defendants' Interrogatory Responses) (Ex. A, Norris Depo., p. 163:2-18) (Ex. I, Uzzell Affidavit).

The undisputed record evidence proves that Plaintiff is not entitled to overtime compensation under the FLSA. As an initial matter, Plaintiff is paid on a salaried basis. Plaintiff is paid a fixed rate of $800 per week without regard to the quality or quantity of work performed. Indeed, once more, Plaintiff appears to concede as much and Ms. Potter confirms that Plaintiff is paid her salary in full each week, despite the quality or quantity of work performed. *See,* (Ex. D, Potter Depo., pp. 96:13-97:4) ("Q: And that salary's intended to cover whether she works one hour or if she works a hundred hours . . .So if she takes a couple breaks during the day or if she's late during the day, [Mr. Uzzell] isn't being charged any less or additional money, is he?" "A: No."). Plaintiff is unable to point to any evidence, and indeed no such evidence exists, that there has ever been a pay period where her salary was in fact reduced based upon the quality or quantity of her work, even when she takes an unannounced week-long vacation.

Similarly, the undisputed record evidence establishes that Plaintiff's primary duty is managerial or administrative in nature. The Fourth Circuit's *per curiam* decision in *In re Food Lion, Inc.* is illustrative. 151 F.3d 1029. In *Food Lion*, the Fourth Circuit reviewed this Court's decisions to dismiss several assistant manager plaintiffs' claims for overtime on summary judgment. *Id.* The Fourth Circuit applied the "short test" for determining whether an employee's primary duty is management

to the plaintiffs' claims because each of the plaintiffs earned a salary greater than $250 per week. *Id.* at *3.

> Analysis of whether an employee's primary duty is management begins with determining which of the employee's duties involve management of a recognized department or subdivision of the employer. As a "rule of thumb," the employee must devote more than fifty percent of his time to these duties.... Other pertinent factors, however, may indicate that management is the employee's primary duty. *Among the factors to be considered are: (1) the relative importance of the managerial duties as compared with other types of duties, (2) the frequency with which the employee exercises discretionary powers, (3) the employee's relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.*

*Id.* at *4 (quoting *Shockley,* 997 F.2d at 25-26) (emphasis added).

In its analysis of the factors for determining whether the plaintiffs' primary duties were managerial, the Fourth Circuit considered the following facts: (1) in a deposition, a plaintiff testified that he was, at least partially, in charge of Food Lion's "effective scheduling;" (2) a plaintiff admitted to fielding employee complaints, interviewing job candidates, disciplining employees, and supervising employees' work; and (3) each plaintiff was in charge of the store in the absence of the store manager. *Id.* at *8-9. The Fourth Circuit acknowledged that the plaintiffs periodically performed some non-exempt duties, such as stocking and unloading trucks, but ultimately held that those tasks did not preclude them from qualifying for the bona fide executive exemption. *Id.* at *9.

Plaintiff's undisputed $800 per week salary is greater than $250, requiring the application of the "short test" for determining whether her job duties are managerial in nature. Plaintiff's primary role is management of employees and restaurant affairs. Akin to the plaintiffs in *Food Lion,* Plaintiff testified that she, in her role as a manager, has in-depth knowledge of sales, food orders, restaurant expenditures, and ensuring efficacy of restaurant protocols. (Ex. A, Norris Depo., p. 163:2-18). Moreover, the record evidence establishes that Plaintiff is responsible for employee supervision, and is regarded as a supervisor within the restaurant. "The supervision of other employees is clearly a management duty." *Food Lion*, 151 F.3d 1029 at *9 (quoting *Donovan v. Burger King Corp. ("Burger King I")*, 672 F.2d 221, 226 (1st Cir. 1982)).

While Plaintiff does provide some customer service support and supports waitstaff where necessary, those tasks are merely ancillary to her primary role as the front of house manager. "The fact that an employee executes both managerial and nonexempt work tasks normally undertaken by hourly employees, however, does not preclude his qualifying for the *bona fide* executive exemption." *Id*. Federal wage and hour regulations specifically address a situation exactly like this one:

> For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption.

29 C.F.R. § 541.106(b).

Plaintiff's FLSA claim lacks factual support, lacks legal merit, and should be dismissed.

 

       b.  *Plaintiff is not legally entitled to participate in the restaurant's tip pool, and has received all tips to which she contends she is owed.*

Defendants incorporate by reference the arguments set forth in Sections II.b. and II.c. of this Memorandum of Law as if fully set forth herein with regard to Plaintiff's tip pool-related wage and hour claims.

## IV.   PLAINTIFF'S SEX DISCRIMINATION CLAIM SHOULD BE DISMISSED.

       a.  *Plaintiff's Claims Regarding Events Occurring More Than 180 Days Before Filing Her Charge are Barred by the Statute of Limitations Set Forth in 42 U.S.C. § 2000e-5(e)(1).*

Under Title VII, a plaintiff can only seek redress for discriminatory acts that occurred within 180 days prior to the filing of the EEOC charge. 42 U.S.C. § 2000e-5(e)(1); *see also, Barbier v. The Durham County Board of Education*, 225 F.Supp.2d 617, 624 (M.D.N.C. 2002) (citing *Tinsley v. First Union National Bank*, 155 F.2d 435 (4th Cir. 1998)).

The 180-day period will be respected "unless the employee's failure to file in [a] timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his [EEOC] charge." *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982).

In this case, Plaintiff filed her Charge of Discrimination on or about June 28, 2021. *See,* (Ex. H, Charge of Discrimination). Plaintiff's Charge alleges that discriminatory conduct began on October 1, 2020. *Id*. As an initial matter, and as set forth *infra*, Fat Burgers specifically denies Plaintiff was ever discriminated against at any time during her employment at Fat Burgers.

However, to the extent that Plaintiff complains that Mr. Uzzell or any other employee of Fat Burgers discriminated against her, all such complaints are time barred to the extent that they fall outside of the 180-day time limitation imposed by Title VII. 42 U.S.C. § 2000e-5(e)(1). Therefore, none of the events that took place prior to December 28, 2020 can support her claims for discrimination, since all such occurrences took place more than 180 days before the date she filed her Charge of Discrimination.

> b. *Plaintiff's sex discrimination claim fails where she has not suffered an adverse action, and Plaintiff has put forth no evidence that she has been discriminated against on the basis of sex.*

Plaintiff alleges that she was discriminated against based on her sex in violation of Title VII. Title VII "prohibits an employer from discharging any individual, or otherwise discriminating against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's [sex.]" *Bing v. Brivo Systems*, LLC, 959 F.3d 605, 616-17 (4th Cir. 2020) (internal punctuation omitted) (citing 42 U.S.C. § 2000e-2(a)(1)). A plaintiff can attempt to show that she was discriminated against based on her sex in one of two ways.

The first structure of proof requires her to demonstrate "through direct or circumstantial evidence that [her sex] was a motivating factor in the employer's adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). The second structure of proof requires her to show "(1) she is a member of a protected class; (2) she suffered some adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances that raised an inference of unlawful discrimination." *McKiver v. General Electric Co.*, 11 F. Supp. 2d 755, 758 (M.D.N.C. 1997) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742 (1993)). Known as the *McDonnell Douglas* burden-shifting framework, this framework is "more plaintiff-friendly" and is addressed in greater detail *infra*. *See Sanders v. Tikras Tech. Solutions. Corp.*, 725 Fed. Appx. 228, 229 (4th Cir. 2018).

If the plaintiff is able to show the above *prima facie* case of discrimination, then "the burden shifts to the employer to articulate a nondiscriminatory reason for its action." *Laing v. Federal Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). If the employer meets this burden of production, the plaintiff must then "prove that the employer's explanation was in fact pretext." *Id.* (internal quotations omitted).

Plaintiff's sex discrimination claim does not raise an inference of unlawful discrimination. In order to give rise to an inference of unlawful discrimination, Plaintiff is required to provide more "than her own unsubstantiated assertions." *Rowe v. North Carolina Ag. & Tech. State Univ.*, 630 F. Supp. 2d 601, 610 (M.D.N.C.

2009). "An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment. The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action. There must be some significant detrimental effect and absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action...." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citations omitted) (quotations omitted).

Plaintiff's sex discrimination claim fails for at least two reasons. First, the undisputed record evidence demonstrates that she has suffered no adverse employment action. Second, she has not experienced disparate treatment based on her sex.

Plaintiff did not experience a decrease in compensation. To the contrary, she has received steady increases in compensation. There was also no change in her job title or level of responsibility, and no disciplinary action was taken against her throughout the relevant time period of this case.  (Ex. I, Uzzell Affidavit) (Ex. C, Defendants' Interrogatory Responses).

Plaintiff alleges that she experienced disparate treatment because of her sex. (DE 1, ⁋ 58). Plaintiff specifically alleges that she was paid less than male employees, she was subject to a hostile work environment, and she was not properly compensated because of her sex. To support her claim that she was paid less than male employees, Plaintiff testified that at some point Fat Burgers employees were given an incentive

to arrive on time for their shifts. (Ex. A, Norris Depo., pp. 191:20-194:6). That incentive was a $1.00 per shift wage increase for each shift that they arrived on time for a total of three months. (*Id.*) Plaintiff also testified that each of those males were given salaried employee status shortly thereafter. (*Id.*) However, Plaintiff's testimony relied upon mere conjecture and speculation, which cannot withstand summary judgment.

The extensive documentation produced in discovery demonstrates that: (1) the employees who received the $1.00 increase received the increase without regard to their sex; and (2) despite the wage increase, Plaintiff remained the highest paid employee at Fat Burgers as she continued to earn a weekly salary, tips, and a significant share of Fat Burgers' profits. Moreover, when questioned further about her testimony that *all* of the males were placed on a salaried compensation structure, Plaintiff testified that she was told that *one* male *may* have been placed on a salaried compensation structure, but did not have personal knowledge regarding that individual's pay. (*Id.*, pp. 193:14-194:6).

Furthermore, Fat Burgers had a legitimate, nondiscriminatory reason for offering these temporary wage raises: they were hourly employees who arrived on time for their shifts. Assuming Plaintiff is able to establish her *prima facie* case, her ultimate claim of discrimination fails because of Fat Burger's legitimate, non-discriminatory reason for the temporary wage increase. An employer's "burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion." *Holley v. North Carolina Dep't of Admin.*, N.C., 846 F. Supp. 2d 416,

428 (E.D.N.C. 2012). If the employer is able to meet this burden of production, "the presumption of unlawful discrimination created by the *prima facie* case 'drops out of the picture' and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

Fat Burgers has a clear and legitimate reason for offering temporary wage raises to its staff. Plaintiff was not offered the temporary raise because she was salaried. In order to prove that Fat Burgers' stated reason for the temporary wage raise, Plaintiff "may present direct or indirect evidence to support her claim of discrimination, [but] unsupported speculation is insufficient." *Evans*, 80 F.3d at 960. The record is devoid of such evidence.

Finally, the undisputed record evidence, including Plaintiff's own deposition testimony, establishes that Plaintiff was the only employee, regardless of sex, who was subject to the alleged insulting conduct described by Plaintiff. (*Id.*, pp. 212:16-215:16) (Ex. O, Robyn Wright-Osment Deposition Transcript ("Wright-Osment Deposition"), pp. 49:3-5, 63:23-64:1, 69:17-21). For most, if not all, of the relevant time period, more than half of all Fat Burgers employees have been women. (Ex. I, Uzzell Affidavit). Any arguments, disagreements, and insulting utterances occurred not because of Plaintiff's sex, but because of her romantic relationship with Mr. Uzzell. Former romantic partners are not a legally protected class under Title VII, and as such, Plaintiff's discrimination claim falls short of her burden of proof.

      c.  *Plaintiff's sexual harassment claim fails where she was not subject to a hostile working environment.*

Title VII protects employees against extreme harassment in the workplace that has "create[d] a hostile working environment cause of action." *E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001). "Nonetheless, Title VII does not create a 'general civility code' in the workplace; it only proscribes behavior that is 'so objectively offensive as to alter the conditions of the victim's employment.'" *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998 (1998)). The workplace must be "permeated with discriminatory *sex-based* intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)) (internal punctuation omitted) (emphasis added).

In order to be successful in her claim for a hostile work environment, Plaintiff "must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree*, 335 F.3d at 331 (citing *Spicer v. Va., Department of Corrections*, 66 F.3d 705, 710 (4th Cir. 1995)).

When asked to describe the alleged harassment referred to in her Complaint, Plaintiff alleges that Mr. Uzzell engaged in name calling within their small-town community, drove past her home, placed a tracking device on her car, and texted her

that "he's glad [she] made it home safe with [her] boyfriend." (Ex. A, Norris Depo., pp. 90:4-100:13). Notably, the conduct described by Plaintiff is wholly unrelated to her employment at Fat Burgers. Indeed, these instances allegedly occurred outside of the restaurant, and outside of her work hours. Fat Burgers necessarily cannot be at fault for conduct which allegedly occurred outside the workplace, and had no reasonable relation to work.

For the reasons thoroughly outlined in Section IV.b. of this Memorandum, Plaintiff cannot demonstrate that the alleged actions, including allegations of disparate treatment in the workplace, were based on Plaintiff's sex. Plaintiff also cannot demonstrate that the alleged workplace harassment "was so severe or pervasive as to alter the conditions [her] employment and create an abusive or hostile atmosphere." *E.E.O.C. v. Central Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). The "severe or pervasive" requirement "has both subjective and objective components." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). First, Plaintiff must be able "to show that [she] subjectively perceived the environment to be abusive." *Id.* (internal punctuation omitted). Next, Plaintiff must show "that the conduct was such that a reasonable person in [her] position would have found the environment objectively hostile or abusive." *Id.* (internal quotations omitted). The Fourth Circuit "has likewise recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Id.*

To determine "whether the harassing conduct was *objectively* severe or pervasive, we must look at all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Perkins v. International Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (emphasis added). Even if Plaintiff found the behavior offensive,

> [I]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.

*Sunbelt Rentals, Inc.*, 521 F.3d at 315-16 (internal punctuation and citations omitted).

"A recurring point in these opinions is that simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998) (internal citations and punctuation omitted).

A few isolated derogatory comments[3] by Plaintiff's former romantic partner, paired with actions that are altogether unrelated to work and often occurring outside of the workplace when neither party was "on the clock", do not rise to the high bar set by the Fourth Circuit. At most, these comments reflect mere offensive utterances or relationship turbulence with a supervisor. The alleged comments and actions did not

---

[3] Demeaning, name calling comments which have been alleged are denied.

create an abusive working environment and they were never physically threatening. Further, Plaintiff only alleges that a few comments she found to be offensive were made within the workplace and this is not nearly as pervasive as is required to meet her *prima facie* burden of proof.

To the extent that Plaintiff does allege that she experienced some harassment and discrimination within the workplace and related to work, such allegation is essentially this: since the end her romantic relationship with the owner of the business, she no longer receives preferential treatment at work. *See,* (Ex. A, Norris Depo., p. 175:20-21) ("And I am treated like everyone else in that restaurant."). *See also,* (*Id.*, p. 104:15-19) ("Because obviously with the retaliation, whenever [Mr. Uzzell] and I were in a relationship, it didn't matter if I was taking the vacations, the two-week vacations with him, and whether I was clocking in or clocking out.").

The law in the Fourth Circuit as it relates to paramour preference is clear: "The Fourth Circuit has expressly held that a supervisor's preferential treatment of a paramour on the basis of a sexual relationship that is consensual is not discrimination based on sex." *Ahern v. Omnicare ESC LLC*, 2009 WL 2591320, at *5 (E.D.N.C. Aug. 19, 2009) (citing *Becerra v. Dalton*, 94 F.3d 145, 149–50 (4th Cir. 1996)). If paramour preference is not sex discrimination as a matter of law, it follows, then, that the withdrawal of paramour preference, too, cannot be sex discrimination as a matter of law.

> d. *Plaintiff's retaliation discrimination claim fails where the record evidence fails to establish but-for causation.*

Plaintiff alleges that she was retaliated against in violation of Title VII. "To prove a prima facie case of retaliation, [the plaintiff] must show that '(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action.'" *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)). Once a claimant meets "the elements of her prima facie case, the burden shifts to [the employer] to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." *Id.* "If the employer carries its burden, 'the [claimant] must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered' were pretextual." *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1091 (1981)).

Plaintiff alleges that she was retaliated against in the following ways: further harassment, loss of her bonus/profit share, and loss of her ability to earn tips. (DE 1, ¶ 56). Plaintiff "bears the burden of establishing that unlawful retaliation 'would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Netter*, 908 F.3d at 938 (quoting *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013)).

The record demonstrates that Plaintiff experienced no work-related harassment. Even assuming, *arguendo*, that Plaintiff experienced harassment, the record demonstrates that the conduct was based on a strained personal relationship between Mr. Uzzell and Plaintiff, and not in retaliation for participation in any

protected activity. As discussed more completely above, Plaintiff received each bonus/profit share payment to which she was entitled and has been paid everything she earned. Finally, Plaintiff's inability to earn tips for a brief period of time was in no way related to her participation in a protected activity. Rather, this decision was made as part of Fat Burgers attempt to "follow[] the law," as described by Plaintiff's own counsel. (Ex. D, Potter Depo., p. 94:13-14).

## V.     PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED.

"North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable within an employment claim." *Jackson v. Blue Dolphin Communications of N.C., LLC*, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002). A successful intentional infliction of emotional distress ("IIED") claim must demonstrate extreme and outrageous conduct "which is intended to cause and does cause" severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "The liability clearly does not extend to mere insults, indignities, [and] threats." *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994).

To support her IIED claim, Plaintiff alleges that the allegations she has identified as sexual harassment, stalking, and retaliation equate to extreme and outrageous conduct by her employer. Additionally, Plaintiff described apprehension about being questioned about the quality of her job performance and personal life, discomfort, and inability to trust when questioned about her claim of emotional distress. (Ex. A, Norris Depo., pp. 225:25-226:24). Plaintiff is unable to demonstrate,

based on the record evidence, that her employer engaged in extreme and outrageous conduct, or that she experienced any legally actionable emotional distress.

The Middle District's analysis in *Thomas v. Northern Telecom, Inc.* is persuasive here. 157 F. Supp. 2d 627 (M.D.N.C. 2000). In *Thomas*, an employee sued her employer alleging Title VII discrimination and North Carolina emotional distress claims. The alleged conduct described by the plaintiff as the basis for her IIED claim was:

> (1) giving her an excessive workload compared to her co-workers; (2) requiring that she receive supervisor permission to attend physical therapy, while allowing white employees to attend therapy whenever they wanted; (3) failing to file paperwork on a timely basis and thereby causing her to stop receiving disability payments; (4) creating a hostile work environment; and (5) discharging her in retaliation for exercising her rights under Title VII. While the court finds this conduct deplorable if committed, such conduct fails to rise to the level of "extreme and outrageous" under North Carolina law.

*Id.* at 635. The court, recognizing the rigorous standard of proof in workplace emotional distress claims, ultimately held that such conduct, while deplorable, failed to rise to the level of "extreme and outrageous" under North Carolina law. *Id.*

The North Carolina Court of Appeals decision in *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116 (1986) is also instructive. *Id.* at 636. In *Hogan*, the North Carolina Court of Appeals reviewed three employees' claims for workplace emotional distress, wherein two were dismissed on summary judgment. *Id.* The Court of Appeals held that the following allegations as to a supervisor were insufficient as a matter of law to support a finding of IIED: (1) screaming profanities

at an employee, (2) calling an employee names, (3) interference with an employee's work, (4) throwing items at an employee, (5) refusing to grant an employee pregnancy leave, (6) directing an employee to carry objects weighing more than ten pounds even though she was pregnant, (7) refusing to let a pregnant employee leave work to go to the hospital, and (8) firing said pregnant employee when she left work without permission. *Id.,* 79 N.C. App. at 490-94, 340 S.E.2d at 121-23.

The allegations that the Court did allow to move forward were related to grotesque sexual demands and behavior such as: (1) continuously making sexually suggestive remarks to an employee, (2) touching an employee in an offensive manner, (3) screaming profanities at an employee when she rejected his sexual advances, (4) threatening an employee with bodily injury, and (5) advancing toward an employee with a knife and slamming it down in front of her in a threatening manner. *Id*.

Here, none of the alleged conduct and utterances about which Plaintiff complains rises to the heightened standard for workplace emotional distress outlined in both North Carolina and Fourth Circuit precedent. "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress[,] and the record evidence simply does not establish that this is one of those rare cases." *Thomas*, 157 F. Supp. 2d at 635 (citation omitted).

Plaintiff has neither successfully alleged nor proven that Defendants subjected her to actionable intentional infliction of emotional distress.

**CONCLUSION**

This case does not involve a valid Title VII employment discrimination claim, intentional infliction of emotional distress claim, FLSA claim, or Wage and Hour Act claim. At all times during her employment with Fat Burgers, Plaintiff was properly compensated. Further, Plaintiff has not been discriminated against for any reason, and she has specifically not been discriminated against on the basis of sex.

This the 14th day of December 2023.

By:     /s/ Marshall Wall
        F. MARSHALL WALL
        NC State Bar No. 26804
        RASHAWNDA MURPHY WILLIAMS
        NC State Bar No. 54936
        CRANFILL SUMNER LLP
        Post Office Box 27808
        Raleigh, NC 27611-7808
        Telephone: (919) 828-5100
        Fax: (919) 828-2277
        Email: MWall@cshlaw.com
               RWilliams@cshlaw.com
        *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-144-D-BM

VICTORIA NORRIS,                    )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )
                                    )          **CERTIFICATE OF SERVICE**
FAT BURGERS SPORTS BAR &            )
GRILL, LLC and WILLIAM              )
UZZELL, III,                        )
                                    )
                    Defendants.     )

The undersigned hereby certifies that on December 14, 2023 the foregoing *Memorandum* was filed electronically with the Clerk of the United States District Court for the Eastern District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of the same to all counsel of record registered with the CM/ECF system.

L. Michelle Gessner
Gessner Law, PLLC
P.O. Box 78161
Charlotte, NC 28271
michelle@mgessnerlaw.com

**CRANFILL SUMNER LLP**

By:     /s/ Marshall Wall
        F. MARSHALL WALL
        NC State Bar No. 26804
        RASHAWNDA MURPHY WILLIAMS
        NC State Bar No. 54936
        Post Office Box 27808
        Raleigh, NC 27611-7808
        Telephone: (919) 828-5100
        Fax: (919) 828-2277
        Email: MWall@cshlaw.com
        RWilliams@cshlaw.com
        *Attorneys for Defendants*