IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-144-BO-BM

| | | |
|---|---|---|
| VICTORIA COSTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' RESPONSE TO** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| FAT BURGERS SPORTS BAR & | ) | **ATTORNEY FEES AND COSTS** |
| GRILL, LLC and WILLIAM | ) | |
| UZZELL, III, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Fat Burgers Sports Bar & Grill, LLC ("Fat Burgers") and William Uzzell, III ("Mr. Uzzell") (collectively "Defendants"), by and through undersigned counsel, respectfully submit this Response in opposition to Plaintiff's Motion for Attorney Fees and Costs. [DE 143].

## STATEMENT OF THE CASE

This case was tried to a jury in Elizabeth City on October 27 and 28, 2025. [DE 121]. The Court entered its Judgment on the evening of October 28, 2025 after the jury returned its verdict. [*Id.*]. The jury found in Plaintiff's favor on her claim for a sexually hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 and awarded her $40,000 in compensatory damages and $60,000 in punitive damages. [DE 121]. An Amended Judgment was entered on May 21, 2026 following the Court's decisions on post-trial motions. [DE 136]. That Amended Judgment

reduced the verdict to $50,000 due to the cap on damages contained within Title VII and clarified that the judgment was only against Fat Burgers. [*Id.*].

Plaintiff did not recover on any of the other claims asserted in her Complaint in this action, including her claim for emotional distress under common law, her claim pursuant to the Fair Labor Standards Act ("FLSA"), her claim under the North Carolina Wage and Hour Act ("NCWHA"), or her claim for sex discrimination under Title VII of the Civil Rights Act of 1964. [DE 1]. On June 22, 2026, Plaintiff filed a Notice of Appeal related to various adverse rulings. [DE 138]. Plaintiff then filed this Motion on June 24, 2026 seeking recovery of attorney's fees and costs. [DE 143].

## LEGAL ARGUMENT

### I.  Standard of Review and Applicable Law.

If a court determines that attorneys' fees are appropriate in a matter, it must then determine the reasonable amount of attorney's fees to award. "A fee applicant has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp.2d 780, 788 (D. Md. 2000).

"In calculating attorney's fees, the Fourth Circuit employs the 'lodestar' formula, multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir. 2002). "[A]fter calculating the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it

then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). "[T]he lodestar looks to 'the prevailing market rates in the relevant community.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Further, "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* (emphasis in original).

The Fourth Circuit provides additional direction for the Court to consider in determining what constitutes a reasonable lodestar fee. "[A] district court's discretion should be guided by the following twelve factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (citations omitted).

## II. Plaintiff Can Only Recover Fees and Costs from Defendant Fat Burgers.

While Plaintiff's Motion asks that the Court "award attorney fees .. and reimbursement of costs … against **Defendants**", [DE 143, emphasis added], Plaintiff seems to recognize that she can only recover fees and costs from Fat Burgers and not from Mr. Uzzell. "Costner is therefore entitled to recover a reasonable attorney's fee, including appropriate litigation expenses and costs, from Defendant Fat Burgers Sports Bar & Grill, LLC." [DE 144 at p. 5].

Plaintiff only recovered damages on one claim, specifically the Title VII claim that she was subjected to a sexually hostile work environment. [DE 136]. Her recovery on that claim was only against Fat Burgers and not against Mr. Uzzell individually. *Id.* Every claim asserted against Mr. Uzzell individually was either dismissed or was not submitted to the jury. Since Plaintiff failed on every claim she made against Mr. Uzzell, she is not a "prevailing party" as to him and cannot recover attorneys' fees or costs from him. Any award of fees and costs can only be made against Fat Burgers. *See, e.g., Wilder v. GL Bus Lines*, 258 F.3d 126, 129 (2d Cir. 2001); *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 792 (1989) ("at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.").

### III. Any Fees Awarded to Plaintiff Should be Reduced Due to Her Limited Success on the Merits.

Plaintiff's Complaint included four counts. [DE 1]. Within those were several separate claims for relief. The first Count includes three separate claims under Title VII against Fat Burgers: (a) hostile work environment based on sex; (b) discrimination based on sex; and (c) retaliation. Only the first of those, a sexually hostile work environment, survived summary judgment and was submitted to the jury. [DE 63; DE 136].

Her second Count for intentional infliction of emotional distress was also dismissed on summary judgment. [DE 63].

Her third Count under the Fair Labor Standards Act included two separate claims for: (a) failure to pay overtime, and (2) retaliation. The overtime claim was dismissed on summary judgment. [DE 63]. While her retaliation claim survived summary judgment, Plaintiff did not include it in the parties' jointly proposed jury instructions and so it was abandoned. [DE 90].

Finally, her fourth Count sought recovery under the NCWHA for: (a) unpaid bonuses; and (2) unpaid tips. The bonus claims were dismissed on summary judgment. Like the retaliation claim under the FLSA, the claim for unpaid tips was abandoned.

Plaintiff's Complaint also mentions a claim for alleged violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA") but included no such cause of action within the pleading. (DE 1, ¶¶ 1, 18; Prayer for Relief ¶ 4). Plaintiff never asked that the jury be instructed on a REDA cause of action.

In her Prayer for Relief, Plaintiff requested the following damages and relief:

- Back pay;
- Front pay;
- Salary/pay increases;
- Bonuses
- Insurance;
- Benefits;
- Emotional distress damages;
- Unpaid tips;
- Overtime compensation;
- Treble damages for violation of REDA;
- Punitive damages; and
- Injunctive relief.

Of these, Plaintiff only recovered on two of the 12 categories of relief sought: emotional distress damages (under Title VII only) and punitive damages on her Title VII sexually hostile work environment claim. The other elements of damages were either lost on summary judgment, abandoned, or never pursued. As noted above, one of the factors considered in deciding whether to award fees is "the amount in controversy and the results obtained." *Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239, 243 (4th Cir. 2010) (unpublished).

Plaintiff's recovery on her Title VII claims was capped at $50,000 due to the size of Fat Burgers. 42 U.S.C. § 1981a(b)(3)(A). That was ultimately the only claim on which she prevailed. On January 4, 2024, now more than two-and-a-half years ago, Defendants served an Offer of Judgment on Plaintiff offering to resolve this action for $50,000 – precisely the amount awarded to Plaintiff in the Amended Judgment in this case. [Exhibit 1; DE 136]. Since Plaintiff's damages under Title VII were capped at $50,000, her decision to decline the Offer of Judgment and pursue years of litigation should not now work to her benefit.

As Plaintiff's counsel has argued in another case, "fees should be apportioned between successful and unsuccessful arguments." (Exhibit 2, *Barber v. Coastal Horizons Center, Inc.*, 7:21-cv-00061-M, DE 79, p. 2). Here, Plaintiff succeeded on one-fourth of her claims against one defendant, at best, and failed to recover on every claim asserted against the other. She should not recover more than one-fourth of the attorney's fees that are legitimately taxable against Fat Burgers under applicable law.

## IV. The Court Should Significantly Reduce Plaintiff's Attorney's Fee Request for Excessive and Unnecessary Time as Well.

A court should exclude from the calculation of fees for "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (superseded by statute on other grounds, *See Gisbrecht v. Barnhart*, 535 U.S. 789, 792 (2002)). "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (citations omitted, emphasis in original); *See also, Spell v McDaniel*, 616 F. Supp. 1069, 1085 (E.D.N.C. 1985*), aff'd in part, vacated in part, remanded in part on other grounds by Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) (quoting *Copeland* v. *Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*) (emphasis in original)). "While a party to a litigation may choose its own level of litigation expense, it may not impose its own approach on a losing adversary." *Queenie, Ltd. v. Nygard International*, 204 F. Supp. 2d 601, 608 (S.D.N.Y. 2002).

"After reviewing the billing records submitted, the court must ensure that the prevailing attorneys have exercised 'billing judgment.' Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. Time that is 'excessive, redundant, or otherwise unnecessary' should be excluded." *CoStar Group, Inc.,* 106 F. Supp.2d at 789 (quoting *Hensley,* 461 U.S. at 434); s*ee also Dameron v. Sinai Hosp. of Balt., Inc.,* 644 F.Supp. 551, 557 (D. Md. 1986) (considering duplication of efforts in determining whether attorney fee request was reasonable).

### A. Clerical Tasks Are Not Billable to Fat Burgers.

Clerical tasks cannot be included in an attorney's fee award. As this Court has recognized, "[i]t is well established that purely clerical tasks should not be compensated for…. It is also well established that it awarding the full attorney rate for activities that could more effectively be performed by non-lawyers is improper." *Yates v. Colvin*, No. 5:14-CV-472-BO, 2015 WL 1284241, at *2 (E.D.N.C. Mar. 18, 2015) (citations omitted).

The billing in this case includes numerous entries by legal assistants for time spent "Indexing Documents", on "Indexing/File Clean Up", spent to "Download/upload" documents filed with the Court or produced in discovery, or spent to "Save and File" documents. [DE 144-1, pp. 16-36]. These are not activities requiring legal expertise and should not be billed to Fat Burgers at all, but certainly not at a rate of $255 per hour. Every task performed by Plaintiff's counsel's legal assistant

falls within the definition of "purely clerical tasks" and should be deducted from the fees sought by Plaintiff.

### B. Plaintiff Unnecessarily Increased the Cost of Litigation.

Over and over in this case, Plaintiff litigated issues that served only to increase her ultimate request for attorney's fees. For example, after the Court allowed, in part, Defendants' Motion for Summary Judgment and ordering the case for a court-hosted settlement conference, Plaintiff filed a Motion for Leave to File First Amended Complaint that would have significantly changed the issues in the case. [DE 63; DE 64; and DE 66]. That Motion was denied. [DE 74]. Earlier in the case, Plaintiff filed a Motion to Compel. [DE 33 and DE 34]. Plaintiff opposed Defendants' Motion for Extension of Time to respond to that Motion to Compel. [DE 44]. Her opposition was rejected and the extension of time allowed. [DE 45]. Then her motion was ultimately denied as moot. [DE 52].

Plaintiff filed a Motion for Reconsideration of the Court's Order allowed partial summary judgment for the Defendants when the case was transferred between judges. [DE 106]. This motion also requested expedited briefing and a trial continuance. The requests to expedite and continue were denied by text order on October 15, 2025 and the motion for reconsideration was denied by oral order on October 28, 2025. After trial, Plaintiff filed a "Motion to Set Remaining Claims for Jury Trial." [DE 131]. This motion was also denied. [DE 135].

Plaintiff submitted two trial briefs [DE 92 and DE 113] and two requests for jury instructions [DE 109 and DE 115] – in addition to the set jointly and timely

submitted by all parties. This duplication of effort was unnecessary and, again, only served to increase the cost of litigation for all parties including the Defendants.

Further, Plaintiff's conduct of discovery and depositions in the case resulted in needless waste of time and expense. For example, Plaintiff set depositions of two witnesses on a date less than one week after subpoenas were sent to those witnesses and without any consultation with Defendants' counsel, requiring Defendants to file a motion to quash those subpoenas or alternatively for a protective order. [DE 36]. The conduct at Plaintiff's deposition required a Motion to Compel by the defense, again increasing the time spent on issues unrelated to the actually claims and defenses in this lawsuit. [DE 39].

These unnecessary motions practice and discovery tactics did not serve to decide the legal or factual issues in this case. Instead, they raised the cost of defending against the Plaintiff's claims for the Defendants and increased the amount of fees sought by this Motion. Such actions should not be rewarded.

### C. Time Spent on Many Tasks was Unreasonable.

Time entries in the records attached to Plaintiff's Memorandum [DE 144-1] reflect inordinate or apparently incorrect amounts of time spent on items in the case. For example:

- March 25, 2026 – 0.80 hours spent reviewing a seven-page document [DE 133];

- May 21, 2026 – 1.40 hours spent reviewing a three-page Order [DE 135] and, separately, 0.30 hours reviewing the two-page Amended Judgment [DE 136];

- October 29, 2025 – 1.20 hours for a legal assistant to "Travel to courthouse; load up exhibit binders" the day after the trial concluded at a rate of $255 per hour;

- September 5, 2025 – 2.80 hours to "Draft responses to Rogs and RPD, research objections and medical records"; this entry was long after the close of discovery and could not have been related to this lawsuit [DE 78];

- May 1, 2025 – 4.20 hours to "Prepare for 2nd settlement conference with Judge Numbers; Strategy call with Ms. Costner re same"; the conference itself lasted less than two hours [DE 144-1, p. 29];

- August 24, 2024 – 9.40 hours to "Prepare for Uzzell depo; Outline questions; Review tax returns and other documents; Prepare Exhibit Notebooks"; Mr. Uzzell's deposition was completed on August 29, **2023**, nearly one year **before** this deposition preparation was done (Exhibit 3 attached);

- November 15, 2023 – 7.20 hours to "Defend Deposition of Victoria Norris." The transcript of this deposition shows that it began at 9:19 a.m. and concluded at 2:00 p.m., therefore the deposition lasted less than five hours. (Exhibit 4 attached);

- October 23, 2023 – 1.20 hours to "Receive and review motion for extension of time to file response as to motion to compel discovery responses and sanctions." This Motion [DE 42] is three pages long.

- October 16, 2023 – 1.00 hours to "Receive/review order referring motion for Magistrate Judge Brian S. Meyers"; this Order [DE 38] is one paragraph long.

These are just a few instances of excessive billing. To the extent that Plaintiff argues that some of these entries were made in error, such as the August 2024 entry for deposition preparation, that is evidence that the time entries were not in fact made contemporaneously with the work done and so the entries should be rejected on that basis as well. *See CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp.2d 780, 788 (D. Md. 2000).

In some instances, block billing makes it impossible to determine whether the time devoted to a task was reasonable. For instance, on October 15, 2024 Plaintiff's counsel billed 2.50 hours with the following entry:

> Multiple conferences with Ms. Norris; Review wage related damages; Prepare declaration and review line by line with Ms. Norris; Answer all questions regarding process

On the same day, another time entry for 1.20 hours included the following:

> Receive and review Order from Court regarding supplemental memorandum due Wednesday; Prepare and send email to Ms. Norris re same and explain; Review file; Begin preparing response

The Order referenced in the second of these time entries appears to be a short text order entered by the Court on October 14, 2024. Entries like these fail to explain the amount of time spent on each discrete task and so to determine whether the time spent on this was reasonable or was excessive. The Court should reduce the amount of any fees awarded to Plaintiff as a result of this lack of detailed billing.

### D. The Rates Sought by Plaintiff's Counsel are Neither Reasonable Nor Customary in the Eastern District.

Plaintiff's counsel indicates that her "current billing rate is $700 per hour." [DE 144-1 at ¶9]. She also states that, "[s]ince 2019, my rate and my teams' rates

have increased marginally each year." Nowhere does she state her billing rates for 2021, 2022, 2023, 2024, or 2025. Instead, all time is billed at her "current" rate. If her billing rates have changed over the years this case has been pending, that should be reflected in the fee petition and would impact – and presumably reduce – the amount of fees sought. This is the way that a paying client's billing would be handled. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).

No information about the education, qualifications, or experience of Plaintiff's counsel's "team" is included in the materials submitted to the Court. Indeed, even the names of the people billing on the case are not in the materials submitted to the Court. As such, with the exception of Plaintiff's lead counsel, it is impossible to identify these billers and to respond to the claim that the charges for their work were reasonable, necessary, or customary for similar cases in the Eastern District.

In a filing made on September 17, 2025 in another case pending before this Court, Plaintiff's counsel included the following chart showing her hourly rates from 2019 through 2025 as well as those of her Senior Paralegal/Research Assistant and her Legal Assistant:

| Year | Lawyer | Senior Paralegal/Research Assistant | Legal Assistant |
|------|--------|-------------------------------------|-----------------|
| 2019 | $565 | $245 | $145 |
| 2020 | $575 | $255 | $155 |
| 2021 | $585 | $265 | $165 |
| 2022 | $595 | $275 | $175 |
| 2023 | $605 | $285 | $185 |
| 2024 | $615 | $295 | $195 |
| 2025 | $625 | $305 | $205 |

(Exhibit 5, attached).

This chart reflects an increase of $10 per year, every year, for each of these positions. Despite this, Plaintiff's counsel now seeks recovery of fees at $700 per hour for her own work in this action, $355 per hour for her Senior Paralegal(s)/Research Assistant(s), and $255 per hour for her Legal Assistant(s). [DE 144 at p. 8]. These rates are 12%, 16.4%, and 24.4% higher, respectively, than the rates sought by counsel from this Court less than one year ago. No explanation is given for these significant increases, particularly when years of historical billing suggest that the 2026 rates for each category of timekeeper would be $635, $315, and $215.

The "Invoice" submitted by Plaintiff as part of her Memorandum in support of this motion does not consistently set out the rates claimed by her now. [DE 144-1, pp. 12-39]. For example, a rate of $300 is used for the work of someone identified by the initials "NH" in 2021. This rate jumps to $350 beginning in January 2022. It appears that this biller was a lawyer but their time is not billed at the lawyer rate set out in

the chart above. In 2022, a biller identified as "AL" is listed with an hourly rate of $175. Similarly, someone with the initials HK bills at $185 in 2023. During the same year, 2023, the time worked by another employee with the initials AH is being billed at $255 per hour.

The fees and costs billed to the Defendants in this case by undersigned counsel's firm for both this case and work done on a related lawsuit filed by Plaintiff in Onslow County Superior Court are less than half of what Plaintiff seeks to recover by way of this Motion. (Exhibit 6, ¶10). Cranfill Sumner's billable rates for this case were also far below those sought by Plaintiff. (*Id.* at ¶8). Indeed, Plaintiff seeks recovery of paralegal time at a rate higher than the rate billed by undersigned counsel, who has practiced law in North Carolina for nearly 27 years. (*Id.*). The rates sought by Plaintiff are not reasonable or customary for this kind of work in this venue.

In addition to the Declaration of undersigned counsel, three Declarations are being submitted with this Response setting out the opinions of attorneys who live and regularly practice in the Eastern District as to the reasonableness of the hourly rates claimed by Plaintiff in this action. (Exhibits 7, 8, 9). The highest hourly rate for attorneys set out in all of those Declarations is $450 and the highest hourly rate for paralegals is $160.

Another attorneys' fee request submitted to this Court earlier this year as part of the settlement of a much more complex case than this one also reflects lower hourly rates for all of the attorneys representing the class and collective action plaintiffs. (Exhibits 10 and 11). In that case, the plaintiffs' attorneys requested fees in the

amount of $600 per hour for an attorney who has practiced for more than 35 years (Jonathan Wall) with reductions to that rate for time spent traveling and doing certain other tasks, $525 per hour for an attorney who has practiced for more than 25 years (Carol Brooke), and $475 per hour for an attorney who has practiced for more than 18 years (Clermont Ripley). All of these lawyers have many years of experience handling difficult employment matters on behalf of plaintiffs. Further, their fee request billed all of the time spent working on the case by paralegals and summer law clerks at $100 per hour. (*Id.*). While these rates are higher than those billed by paying clients in employment cases in this District, these are even outstripped by Plaintiff's request.

The Declaration of Gilda Hernandez submitted by Plaintiff confirms that the rates sought by Plaintiff for work done by paralegals is outside the reasonable and customary range in this area. [DE 144-2, ¶ 15]. In Ms. Hernandez's view, a customary range for paralegal rates is "$90 to $200 per hour." [Id.]. Her Declaration does not set out customary rates for work done by legal assistants – further evidence that these should not be billable as part of a fee award.

Finally, Plaintiff submitted the Declaration of attorney Richard Renner in support of her request for attorney's fees. While Mr. Renner seems to have a long history of representing plaintiffs, labor unions, and public interest groups in litigation in Ohio and Washington, DC, it appears he has only been licensed to practice law in North Carolina since about May 2024 – less than half of the time that this case has been pending. [DE 144-3]. His Declaration does not demonstrate knowledge of

reasonable fees for employment law attorneys practicing in the Eastern District of North Carolina, however.

The rates sought by Plaintiff in her Motion are simply not "the prevailing market rates in the relevant community."

For all the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's request for attorney's fees or significantly reduce the amount awarded to her based on her failure to succeed on the vast majority of her claims and the billing issues discussed in the preceding sections of this Response.

## V. Plaintiff's Costs Request Should Also be Significantly Reduced.

"Rule 54(d)(1) of the Federal Rules of Civil Procedure provides in part that 'costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.' In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* the United States Supreme Court held that Rule 54(d)(1) gives district courts the discretion to 'decline' to tax allowable costs, but not the discretion to tax costs in the absence of statutory authorization. The 'costs' authorized by Rule 54(d)(1) is a term of art not synonymous with expense." *Eagle Ins. Co. v. Johnson*, 982 F. Supp. 1456, 1458 (M.D. Ala. 1997), *aff'd sub nom. Eagle Ins. v. Johnson*, 162 F.3d 98 (11th Cir. 1998) (internal citations omitted).

"In other words, expense includes all the expenditures actually made by a litigant in connection with the lawsuit. Whereas the costs that the district court may award under Rule 54(d)(1) are listed in 28 U.S.C.A. § 1920, and a district court may not award other costs or exceed the amounts provided in § 1920 without explicit

authorization in another statutory provision. The costs, therefore, associated with litigation, almost always will amount to less than the successful litigant's total expenses in connection with the lawsuit. However, '[a]lthough § 1920 is an exhaustive list of the costs that may be routinely awarded under Rule 54(d)(1), the item sought need not be expressly mentioned in that statute, for *Crawford Fitting* does not preclude the courts from construing the provisions of § 1920.'" *Id.* (citations omitted).

Appellate courts "ask two questions when reviewing an award of costs: '(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable.'" *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022) (citation omitted). A court should "review carefully whether an expense is recoverable." *Id.*

Plaintiff's request for costs far exceeds what is allowed under applicable law. By statute, the Court may tax only the following as costs:

(1) Fees for the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Costs related to deposition transcripts may be recoverable under 28 U.S.C. § 1920(2), provided they are "necessarily obtained for use in the case." The statute does not allow recovery of costs for video recordings of depositions, however. Per diem, mileage, and subsistence costs allowed for trial and deposition witnesses are also prescribed by statute. 28 U.S.C. § 1821. Based on Plaintiff's list of costs, it does not appear that payment was made to any trial or deposition witness pursuant to the requirements of 28 U.S.C. § 1821. If such payments were made, Plaintiff's request must still be denied to the extent that it exceeds the limitations set out in this statute.

Simply, many of the expenses for which Plaintiff seeks recovery are not costs allowed by 28 U.S.C. §1920. Among the expenses that cannot be recovered from Fat Burgers are the following:

- **$6,400.00** for focus group expenses in July, September, and October 2025 (DE 144-1, pp. 37-38);

- **$3,521.28** for videography of the depositions of Robyn Wright-Osment, David Ashton Jarrell, Dawn Potter, and Tyler [sic] Greene, (DE 144-1, pp. 36-37); Plaintiff also included exactly the same cost for video of the depositions of Ms. Wright-Osment and Mr. Jarrell *twice* (DE 144-1, pp. 48 and 54) and submitted two different charges for what appear to be the same video of the depositions of Ms. Potter and Mr. Greene (DE 144-1, pp. 51-52));

- The videography cost of the deposition of Mr. Uzzell taken on August 29, 2023, which may be as much as **$3,349.95**; that cost is included within a total invoice from the court reporting agency and the video cost is not itemized separately

from the cost of the transcript so it is unclear how much was charged for the videography portion (DE 144-1, p. 43);

- **$2,600.40** in hotel bills for "GessnerLaw team" and for Plaintiff for the pre-trial conference and trial (DE 144-1, p. 38);

- **$1,516.83**, at least, for attorney travel expenses, including a flight to Norfolk, Virginia, rental car charges, tolls, and mileage (DE 144-1, p. 38);

- **$278.00** for meal charges during trial in the amount of $278.00 (DE 144-1, p. 38);

- **$277.20** for Plaintiff's mileage to and from Elizabeth City for trial (DE 144-1, p. 38);

- **$219.09** for mailing expenses, some of which appear to be duplicative (DE 144-1, pp. 36-38);

- **$50.26** for "Meals for Pretrial Conference" on **June 24, 2025**; note that the pre-trial conference in this case was held in Elizabeth City on **October 6, 2025** (compare DE 144-1, p. 37 (costs), with DE 144-1, p. 29 (fees));

- **$36.90** for parking charges (DE 144-1, p. 37);

- Numerous charges are included for "PACER Research" or "PACER Charges"; it is unclear what these include and no documentation of the charges was submitted with Plaintiff's Motion (DE 144-1, pp. 36-37); and

- All printing and copying charges where the documents printed or copied were only for Plaintiff's own use, such as the entry dated 12/30/2023 for "printing

all depositions" (*See, e.g., McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990)).

As a matter of law, none of the expenses set out above are costs that can be taxed against Fat Burgers. Plaintiff's demand for all of these expenses should be rejected.

Plaintiff cites to *Spell v. McDaniel*, 852 F.2d 762 (4th Cir. 1988), and *Trimper v. City of Norfolk, Va.*, 58 F.3d 68 (4th Cir. 1995) to support her claim for costs. That reliance is misplaced. Both *Spell* and *Trimper* involved claims for relief under 42 U.S.C. § 1983. Successful claimants under 42 U.S.C. § 1983 can seek recovery of their attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b). Employment claims under Title VII are not among the those that fall within the scope of awards under 42 U.S.C. § 1988(b), however, and so Plaintiff cannot rely on that statute or the cases interpreting it.

The costs that Plaintiff can recover in this action are limited to those set out in 28 U.S.C. § 1920 and so any costs awarded should be reduced to those allowed by statute and proven by her to be necessary to the prosecution of this case.

<u>**CONCLUSION**</u>

For all of the reasons set out above, Plaintiff's Motion should be denied or, alternatively, the requested amount of fees and costs sought be her should be substantially reduced.

This the 14th day of July 2026.

/s/ Marshall Wall
F. Marshall Wall
CRANFILL SUMNER LLP
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Fax: (919) 828-2277
Email: MWall@cshlaw.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-144-BO-BM

| | |
|---|---|
| VICTORIA COSTNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CERTIFICATE OF SERVICE** |
| ) | |
| FAT BURGERS SPORTS BAR & ) | |
| GRILL, LLC and WILLIAM ) | |
| UZZELL, III, ) | |
| ) | |
| Defendants. ) | |

The undersigned hereby certifies that on July 14, 2026 the above *Response* was filed electronically with the Clerk of the United States District Court for the Eastern District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of the same to all counsel of record registered with the CM/ECF system.

/s/ Marshall Wall
F. Marshall Wall
CRANFILL SUMNER LLP
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Fax: (919) 828-2277
Email: MWall@cshlaw.com
*Attorneys for Defendants*